IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 3, 2000 Session

**ARTHUR BLAIR v. MARILYN BADENHOPE**

**Appeal from the Chancery Court for Greene County**
**No. 93-101      Thomas R. Frierson, II, Chancellor**

**FILED NOVEMBER 9, 2000**

**No. E1999-02748-COA-R3-CV**

CHARLES D. SUSANO, JR., J., dissenting.

I cannot concur in the majority=s decision to affirm the trial court=s judgment. I believe the evidence preponderates *against* the trial court=s critical factual determinations underpinning its decision to deny Father=s petition seeking the custody of his natural child. Utilizing the standard relied upon by the majority, I find that the evidence preponderates in favor of a finding of Achanged circumstances showing that an award of custody to [Father] would no longer result in substantial harm to the child.@ *See In re Askew*, C/A No. 02A01-9708-CV-00201, 1998 WL 652557, at \*4 (Tenn. Ct. App. W.S., filed September 24, 1998). I hasten to add, however, that I have serious doubts as to the applicability of the standard used by the majority. The case of *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995) suggests that the real issue upon which this case should be decided is simply whether the placing of the child with her father would put Athe child...in danger of substantial harm.@ *Id*. at 685. I believe, if faced with the facts of this case, the Supreme Court would adopt the approach taken in *Simmons* and hold that Achange of circumstances@ is not the standard to be applied in the instant case, involving as it does a fundamental constitutional right of Father.[1]

---

[1]In *Simmons*, parents were attempting to upset a prior order awarding grandparents= visitation. *Id*. at 682. I believe it goes without saying that an award of grandparents= visitation is an example of a much lesser intrusion on a parent=s right to care for his or her child than is an award of custody. If it is not necessary to show a change of circumstances in the former situation, I believe it follows that it is not necessary to make such a showing in order to overturn the more intrusive state action present in a grant of custody to a non-parent.

I agree with the majority that the maternal grandmother has, in the words of the majority, Adone an excellent job of caring for the [c]hild@, but, in my opinion, this fact is not enough to justify the continuation of the separation of this father and his child. There is no proof that Father=s character, conduct, or surroundings are such as to suggest that their reunion would result in a risk of Asubstantial harm@ to the child. *Id*. Furthermore, I find nothing in the nebulous[2] dealings between Father=s wife and Mr. Drummy that occurred in the 1995-1996 time frame to support a finding of a present occasion of substantial harm to this child if Father is awarded her custody.

While recognizing that there have been Apositive changes@ in Father=s life, the majority dismisses their significance by saying that Athey are not unanticipated changes.@ I disagree. I believe Father has demonstrated material changes in his situation, changes that were not anticipated at the time of the earlier court hearing in this matter. To continue to countenance the separation of this parent and his child is to do substantial violence to Father=s fundamental constitutional right to rear and care for his child without interference from the state. *See* Tenn. Const. art. I, ' 8; *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995).

I would reverse the trial court=s judgment and award custody of this young woman to her father. Accordingly, I dissent.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[2] The majority tacitly acknowledges the hazy nature of the evidence pertaining to this relationship by referring to it as Asome sort of relationship.@